**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **KIRIL GORBACHEV** | **CIVIL ACTION NO. 1:26-2170** |
| | **SECTION P** |
| **VS.** | **JUDGE JERRY EDWARDS, JR.** |
| **U.S. IMMIGRATION & CUSTOMS ENFORCEMENT** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Petitioner Kiril Gorbachev,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 14]. For reasons below, the Court should grant this petition.

**Background**

Petitioner is a citizen of Russia. He entered the United States of America on May 11, 2024. [doc. # 1-2, p. 3]. He was taken into immigration custody the same day. [doc. # 1, p. 4].

On December 12, 2025, an immigration judge ordered Petitioner removed from the United States but granted him withholding of removal to Russia. [doc. #s 1, p. 4; 14-3, p. 15]. Petitioner did not appeal the removal order. [doc. # 1, p. 4].

[1] Petitioner's "A Number" is 241-303-148.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On March 12, 2026, Petitioner filed a "Detainee Request to ICE," informing ICE that 3 months had passed since he was granted withholding of removal and asking ICE if it had any plans to release him. [doc. # 1-3, p. 38]. An official responded, "We are trying to move you to a third country still it will still be a while. [sic]." *Id.*

On March 26, 2026, Petitioner asked ICE, "How can I help to release me?" [doc. # 1-3, p. 39]. An official responded, "ICE is working on your departure as quickly as possible." *Id.*

On March 31, 2026, and again on April 2, 2026, Petitioner asked ICE if it had his passport, and ICE twice responded that it was "working on it as quickly as possible." [doc. # 1-3, pp. 40-41].

On April 9, 2026, Petitioner asked ICE if it found a third country for him. [doc. # 1-3, p. 42]. An official responded, "Your case manager is working your case as quickly as possible." *Id.*

On April 15, 2026, Petitioner asked ICE which third countries it identified and if any country accepted him. [doc. # 1-3, p. 43]. An officer responded, "It's pending." *Id.*

On April 16, 2026, Petitioner again asked ICE if it had his passport, and an officer responded, "It's pending." [doc. # 1-3, p. 44].

Petitioner filed this proceeding on approximately June 22, 2026. [doc. # 1]. He claims that ICE has detained him for a prolonged period and is not likely to remove him in the near future. *Id.* at 6. He "has been cooperating with ICE." [doc. # 11]. He even "sent requests to embassies of different countries to accept him, but [he] received denials of his requests." *Id.*

Respondents opposed the petition on July 29, 2026. [doc. # 14].

**Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, he has been detained 218 days (or 7 months, 6 days) following his final order of removal.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. For over seven months, the Government has been unable to obtain a travel document for him. Moreover, He "has been cooperating with ICE." He even "sent requests to embassies of different countries to accept him, but [he] received denials of his requests." Further, he repeatedly asked ICE if it had his passport; while ICE gave him a response, it never addressed his question. He also repeatedly asked ICE if it identified a third country for removal, but ICE only responded, for instance, that it was working on his case and that it would "be a while."

Respondents attach the declaration of Acting Assistant Field Office Director Justin Williams, who declares in part:

> 12) Because the petitioner was granted Withholding of Removal to his native country of Russia, ERO immediately began efforts to remove the petitioner to a third country. On February 5, 2026, ERO emailed the Detention and Deportation Officer (DDO) regarding Third Country Removal (TCR).
>
> 13) Under the authority provided by INA 241(b), ICE is authorized to remove an alien to a country other than the designated country of removal. ICE routinely assesses removal options and may coordinate with third countries for acceptance of individual subject to a final order of removal.
>
> 14) On February 5, 2026, Form I-229 (warning for failure to depart) and a File Custody Review notice was sent out for service on the petitioner.

> 15) On April 8, 2026, ERO Headquarters noted that the case was pending Third Country Removal.
>
> 16) On April 22, 2026, ERO initiated the Post Order Custody Review (POCR) process by sending the 90-day Post Order Custody Review to the Supervisory Detention and Deportation Officer (SDDO) for review.
>
> 17) On April 29, 2026, a File Custody Review (FCR) notice was served on the petitioner, and a Post Order Custody Review interview was scheduled for May 26, 2026.
>
> 18) ERO consistently continued to follow up on securing travel documents and designating a third country for removal. ERO contacted the Detention and Deportation Officer for Third Country Removal updates on May 6, 2026, May 27, 2026, June 4, 2026, and June 11, 2026.
>
> 19) On May 22, 2026, the 180-day Post Order Custody Review interview notice was sent to the facility for service and was officially served on the petitioner on May 26, 2026.
>
> 20) On June 16, 2026, the Detention and Deportation Officer advised that the field office would be notified once substantial updates are received regarding travel document (TD) issuance or third-country removal designation, confirming that the petitioner's case is being actively tracked.
>
> 21) On June 25, 2026, ERO emailed the Detention and Deportation Officer and the Unit Chief regarding Third Country Removal for the petitioner. As of July 6, 2026, ERO was pending a response from the DDO for further processing.
>
> 22) Petitioner has not been removed as of the time of this declaration, July 24, 2026; however, ERO continues actively tracking the case and engaging with the DDO and Unit Chief to secure travel documents and designate a third country of removal. Based on these ongoing operational efforts, there is a significant likelihood of removal in the reasonably foreseeable future (SLRRFF).

[doc. # 14-2].

That Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. Respondents essentially present: (i) a February 5, 2026 request from ERO to DDO regarding third country removal, which the DDO answered over four months later, stating

that that there were no substantial updates; (ii) a notation "that the case was pending Third Country Removal"; and (iii) an unanswered June 25, 2026, email from the ERO to the DDO "regarding Third Country Removal for the petitioner[.]"[4]

Seven months after Petitioner's final order of removal, Respondents have not identified a third country for removal, much less made any efforts at securing a travel document for a specific country. From the record, it appears that they have not even started the process of attempting to remove Petitioner to a specific third country. And they do not state how long the process will take after identifying a third country. Yet, they still detain him.[5]

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[6] They do not, for example, provide any evidence that they have made progress in

---

[4] The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

[5] While not dispositive, the undersigned notes that the Government has detained Petitioner in total for approximately 2 years, 3 months, and 7 days.

[6] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal

obtaining travel documents, that they have been communicating with any country about Petitioner's deportation, that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[7, 8]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas*, 533, U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

---

order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[7] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[8] *See generally Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[9]

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Kiril Gorbachev's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Winn Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if Petitioner has family and emergency contacts on file, notify them of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

[9] The undersigned finds no need to address any claim or request for relief not addressed herein.

**legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 17th day of August, 2026.

Kayla Dye McClusky
United States Magistrate Judge